FOULKE, PLAINTIFF IN ERROR, v. THE PEOPLE EX REL.
FOULKE, DEFENDANT IN ERROR.

1. HABEAS CORPUS—JURISDICTION.

Only those matters which have a necessary connection with the question of the validity of the detention or imprisonment will be considered on *habeas corpus* proceedings. Jurisdiction does not extend in such cases to the adjudication of money demands and unsettled accounts between parties.

2. SAME.

An order denying a petition for *habeas corpus* exhausts the power and jurisdiction of the court in the premises, and all subsequent orders, decrees and proceedings providing for the adjustment of accounts and the payment of money by one party to the other are void.

3. PARENT AND CHILD—CUSTODY OF CHILD.

The father, unless unfit by reason of immorality, is entitled to the custody and control of his minor children. The rule is not departed from except in cases where the court finds it would be greatly to the welfare of the child to have some other custodian.

4. SAME.

A parol agreement by the father placing a child in the custody of another is revocable by him at any time, and upon *habeas corpus* the child will be delivered to him, unless considerations of the child's welfare control.

5. SAME.

The father's custody of his child will not be interfered with by the court unless there be apprehension of ill treatment or moral contamination by him.

*Error to the District Court of Arapahoe County.*

A CONTROVERSY to determine the right to the custody of Harry M. Foulke, an infant under four years old, son of the plaintiff. The mother of the child died when the child was ten months old. The relator Elizabeth Foulke was the sister of the mother, and wife of the brother of the plaintiff.

Shortly before her death the mother wished, at her death, the child to be in the custody of her sister, the relator, who had had more or less the care of it from its birth. The father gave his consent, and upon the death of the mother relator

took the child and has since retained it; resided in this city about a year and then removed to New York, taking the child with her, with the consent of the father. It appears that the father and husband of the relator were neither possessed of means, both being employed by the United States government as mail carriers and dependent upon salaries. In October last relator came to Denver, bringing the child with her. The father had married a second wife and they wished the custody of the child. Negotiations were entered upon, relator insisting upon a settlement of the question of the future custody of the child, offering to adopt and retain it, or to deliver it to the father provided he would pay her about $700 for the care of the child for the time she had cared for it. No determination was reached. The father went to the rooms occupied by relator, who was absent, demanded him from the woman in charge, who delivered him, and he took him to his own home. Thereupon relator filed her petition, praying a writ of *habeas corpus*, which was issued on the 13th day of November, 1893. On the 18th the respondent filed his return to the writ as follows:

" The undersigned, to whom is directed the writ of which the annexed is the copy served on him, respectfully submits to your Honor return thereto as follows:

"First. That he has now before your Honor the body of Harry M. Foulke, as by said writ commanded.

"Second. That he, respondent, is the father of said child, and, as he is advised and believes, is entitled to his custody and control. That he took such custody and control here in the city of Denver, on the 8th day of November, 1893, as he lawfully might do. That although it is true that he consented at the death of his former wife, the mother of said child, having no suitable person to take care of said child, that relator, Elizabeth Foulke, might take him in her custody for a time, but that becoming recently, and within the last three weeks and since the relator came to Denver, satisfied that the best interests of said child required that he should be removed from the custody, control and influence of the relator, he re-

voked his said consent and took said child to his own home, where he is now well able and prepared to keep him and holds said child in his custody and under his control and parental authority, as he may of right do.

(Signed)        "JOSEPH S. FOULKE."

On November 25th the court made the following order: "At this day, come the parties hereto, by their attorneys respectively. And thereupon, this cause having heretofore been submitted to the court, and by the court taken under advisement, and the court being now sufficiently advised in the premises, doth deny said petition.

"And it is further considered by the court that the said respondent, Joseph S. Foulke, do pay to Elizabeth Foulke, the petitioner, such sum as may be agreed upon between them for the care and support of the child. Should the parties hereto be unable to agree, then this cause is continued until the 1st day of December, proximo, for the purpose of hearing testimony in regard to the same."

"It is ordered by the court that the said respondent, Joseph S. Foulke, do pay to the said Elizabeth Foulke, the said petitioner, the sum of five hundred and sixty ($560) dollars for the care and support of the child, Harry Foulke.

"And it is further considered by the court that the further hearing of this cause be continued until the 9th day of December, inst."

And on the 16th of December the court made the following decree: "The cause having been brought on to be heard on the 18th day of November, A. D. 1893, and further heard on the 20th day of said month and year, said hearing then being continued from time to time, and being further heard on the second day of December, A. D. 1893, upon the petition of relator and return of respondent above named, and upon the proofs taken in said action before this court, and it appearing by such testimony that on, to wit, the 8th day of November, A. D. 1893, the relator was the lawful custodian of the body of the infant Harry M. Foulke, such custody having been charged to her by the respondent to

continue until revoked. That on that day, the respondent wrongfully and without demand or notice of revocation unlawfully seized and carried away the body of said child. And it further appearing to the court that the respondent now desires to revoke his contract giving custody of the child to the said relator, after the relator had expended the sum of at least five hundred and sixty ($560) dollars in the care and maintenance of the child, to the return of which she is equitably entitled.

"It is ordered by the court that the lawful custody of the child be awarded and decreed to be in relator, but that, if the respondent shall within five days from the date of this decree, pay to the relator the sum of sixty ($60) dollars on account of said sum, and secured in manner and form as may be provided by the clerk, the balance of said sum to be paid in quarterly installments of $100, with interest at eight per cent per annum, and that upon the payment of said sum and the filing of such security, the custody of the child shall definitely remain with the respondent until the end of the five days from the date of this decree, at which time such child shall be returned to relator if said sum is not paid and secured as above stated."

On the same day a motion was made for a new trial and the following motion was filed: "Now comes Joseph S. Foulke, the respondent, by his attorneys, Henderson and Campbell, and move the court for modification of the decree entered therein, and pray that it be so modified and changed that it shall decree that Joseph S. Foulke, the respondent, was at the time the writ of *habeas corpus* issued in this case, the legal and lawful custodian of said child, Harry M. Foulke, that he had revoked the contract giving the custody of the child to the relator, and that he has the legal and lawful right to the custody of said child. That the decree declare that the child, Harry M. Foulke, was not at the time the writ was issued and is not now, illegally or unlawfully restrained. That the decree declare that the sum of $510 was awarded relator for the care and maintenance of said child, and that

the further sum of $50.00 was awarded her as damages, or that all of said provision be stricken out of said decree. That the provision of said decree requiring that the respondent pay into court the sum of $60.00 in cash and that he secure the balance of $500 be paid in installments of $100 every three months, be stricken out. That the provision in said decree providing that the sum found due the relator draw interest at the rate of eight per cent per annum be stricken out."

On the 21st day of December the following order was made by the court: "This day come again the said parties, by their attorneys respectively. And thereupon this cause having theretofore been submitted to the court upon the motion of said respondent, to set aside the judgment herein and for a new trial of this cause, and by the court taken under advisement, and the court being now fully advised in the premises, doth overrule said motion and doth also overrule the motion of said respondent to modify the order of the court heretofore made and entered herein, and the respondent being now present in court, is asked by the court whether he is now willing to obey the order of the court heretofore made, to which, through his counsel, he answered that he was not. Therefore, the court being of the opinion that the respondent voluntarily placed his said child, Harry M. Foulke, in the custody of the relator for an indefinite time, and that he voluntarily consented that she might take the same beyond the jurisdiction of this court; that she has raised and nurtured and cared for it as a mother; that under the promise not to take it from her, she brought it within the jurisdiction of this court; that after she so brought the said child within the jurisdiction of this court, he consented that she might legally adopt the said child as her own; that thereafter because of some disagreement between his wife and the relator, he changed his mind and by subterfuge, fraud and falsehood, regained the possession of said child from the relator; and the court being further of the opinion that the interests of the said Harry M. Foulke will be as well subserved by being

allowed to remain in the custody of the relator as with any other person, and that the respondent is not willing to attempt to compensate relator for the care bestowed and the money expended upon said child.

" It is considered and adjudged by the court that the status of the relator and respondent, with relation to the custody of the said Harry M. Foulke, be restored to the condition in which it was before the relator came within the jurisdiction of this court, and that she be allowed to take the person of the said Harry M. Foulke and depart hence, leaving the question of his future disposition to be hereafter determined. It is further considered and adjudged by the court that the relator recover her cost herein to be taxed."

On the same date an order was made that the relator remain with the child within the jurisdiction of the court until January 10, 1894.

On January 2, 1894, relator moved the court for leave to take the child and return to New York, and that the respondent pay into court for her use $10.00 per week for the time she had been detained and should be detained by order of the court. On the 3d of January the court made the following order :

" That the said petitioner shall remain within the jurisdiction of this court until the hour of 4 o'clock P. M. on the 8th day of January inst., provided the said respondent pay into the registry of this court within forty-eight hours the sum of twenty-five ($25) dollars for the use of the said petitioner ; and that upon the failure of the said respondent so to do, the said petitioner may depart with the child, Harry M. Foulke, from the jurisdiction of this court and go hence hereof without day."

On January 3, 1894, the record was filed in this court and the writ of error sued out.

On the 16th day of January this court made an order enjoining the respondent from taking the child out of this jurisdiction and afterwards, probably upon the same evening, she left the state, taking the child with her. Whether she

had been served with the order or had knowledge of it, this court is not informed.

Mr. GEO. B. CAMPBELL, Mr. H. C. HENDERSON and Mr. T. H. THOMAS, for plaintiff in error.

Messrs. MORRISON, DE SOTO & MACON and Mr. L. FANCHER, for defendant in error.

REED, J., delivered the opinion of the court.

The first question to be determined must, necessarily, be the extent of the jurisdiction of a court on *habeas corpus* proceedings ; and whether they can embrace an accounting and warrant a court in decreeing money judgments and make the custody of the child dependent upon compliance with the decretal orders for the payment of money.

In this case there were no orders or decree finding and adjudging the custody of the child to either party, except coupled inextricably with decrees for money payments, and the legal right to the custody of the child appears to have been found both ways, and the child redelivered to the defendant as a chattel in pledge, subject to redemption by the father.

One striking peculiarity in regard to the adjudication of the money value of the child, or the amount for which it was hypothecated by the court, was the fact that the proceeding appears to have been purely *ex parte*, without pleadings or issues,—one in which the respondent was not expected or allowed to participate.

Prominent among the early cases decided in the federal court was *U. S. v. Green*, 3 Mason, C. C. 482, where the character and nature of the proceeding is defined by the court as follows :

" A proceeding by *habeas corpus* can in no legal sense be regarded as a suit or controversy between private parties. It is an inquisition by the government, at the suggestion

and instance of an individual, most probably, but still in the name and capacity of the sovereign."

In *Ex parte Milligan*, 4 Wall. 2, it is said: "A petition for a *habeas corpus* duly presented is the institution of a cause in behalf of the petitioner and the allowance or refusal of the process as well as the subsequent disposition of the prisoner, is matter of law and not of discretion."

The rule as stated in Church on Habeas Corpus, sec. 170, appears to be concise and definite and in harmony with all leading English and American decisions. It is, "That only those matters which have a necessary connection with the question of the validity of the detention or imprisonment will be considered; and all other matters will be uniformly rejected."

It will therefore be seen that the proceeding is confined in very narrow limits, and cannot be extended to the adjudication of claims or money demands and unsettled accounts between the parties. The only jurisdiction of the court was to determine whether the father or aunt had the better right to the child and decree it to such custody. See also, *People v. Porter*, 1 Duer (N. Y.) 709; *State v. Bird*, 18 N. J. Eq. 194; *State v. Banks*, 25 Ind. 495; *Wilcox v. Wilcox*, 22 Barb. 178.

Hence, the child being in the custody of the father, in the order of November 25th the words "doth deny the said petition" exhausted the power and jurisdiction of the court, and the balance of the order providing for the adjustment of accounts and the payment of money by the plaintiff to the defendant, was void.

Subsequent proceedings were unique and peculiar. Having in the order above cited denied the petition, thus holding the father legally entitled to the custody, without further hearing or testimony, in a decree entered December 16th, the court stated that the relator had expended at least $560 in maintaining the child, to the return of which she was equitably entitled, and thus changing a proceeding by *habeas corpus* to a suit in equity, proceeds to decree "*that the lawful*

*custody of the child be awarded and decreed to be in the relator,"* *having thus decided the legal question both ways,* declares the last title to be subject to defeasance and the right of the father to redeem within five days, by providing for the payment of the $560. I have not been able to find another case, either in law or equity, where an infant was by the decree of court taken from its father and pledged as security for its board bill.

All the orders, decrees and proceedings in regard to the financial part of the case, being in excess of the jurisdiction, were void.

Only one other question remains to be determined, viz.: Who was legally entitled to the custody of the child? The facts of the case are few and simple. Where there is a conflict in the testimony it is unimportant, and whether found one way or the other would not influence the decision; for instance, relator claims that the father agreed she should keep the child until he was 14 years old; this he denies and claims that it was for some indefinite period.

It is not claimed that the child was adopted and the parent divested of custody and control by a statutory proceeding. The title of the aunt was based on the wish of the mother and acquiescence of the father, and the fact that she had for about two years had the custody pursuant to such arrangement.

It was attempted to establish some kind of an agreement or contract as to some definite time, but the testimony was insufficient. Had it been to the extent claimed by the relator, it would have been of no value and void for want of mutuality. It will not be contended that the father could have compelled the aunt to keep the child for any given time. She could at any time have delivered the child to the father, and he could at any time call for his child.

In this case the father and stepmother, as well as the aunt and uncle, appear to be eminently respectable and proper custodians, and of about equal pecuniary means, so the question of fitness is not involved. Where there is a ques-

tion of morality and fitness, or of poverty or affluence, courts are careful to consider the child's welfare, and sometimes award it to a third party.

In nearly all the older cases, the controversy arose between the father and mother when separated.

The earliest leading case was decided by Lord Mansfield, known as *Brissett's Case*, reported 1 Lofft. 748, where it was said: "The natural right is with the father, but if the father is a bankrupt * * * and if he be an improper person * * * the court will not think it right that the child should be with him." To the same effect is *Rex v. De Mandeville*, 5 East, 220. This common law rule is followed in American courts, and the father, unless unfit by reason of immorality, is held entitled to the custody and control of his minor children. Nor is the rule departed from except in cases where the court finds it would be greatly to the welfare of the child that it should have some other custodian. See *State v. Bird, supra; State v. Banks, supra; Wishard v. Medris*, 34 Ind. 163; *Mayne v. Baldwin*, 5 N. J. Eq. 458; *Armstrong v. Stone*, 9 Gratt. (Va.) 102.

Schouler in his work on Domestic Relations, 343, says: "The general doctrine appears to us, on the whole, to be this: that public policy is against the permanent transfer of the natural rights of a parent; and such contracts are not to be specifically enforced," unless by legal formalities as in the case of adoption and master and apprentice.

In *State v. Baldwin*, 5 N. J. Eq. 454, it said: "A verbal agreement by the father committing the child to the care and custody of another until it should attain its majority, is void, and such child will be restored to its father upon a writ of *habeas corpus*. That the parents are the natural guardians and *prima facie* are entitled to the custody of their minor children."

The authorities almost universally agree that a parol agreement by the father, placing a child in the custody of another, is revocable at any time by the father, and that upon a *habeas corpus* proceeding, the child will be delivered to the father,

unless considerations of the welfare of the child control. See also Church on Habeas Corpus, sec. 428; *Child v. Dodd*, 51 Ind. 484; *Copeland v. The State*, 60 Ind. 394; *McGluman v. Margowski*, 90 Ind. 150; *Brooke v. Logan*, 112 Ind. 183; *State v. Clover*, 16 N. J. Law, 419; *In re Scarritt*, 76 Mo. 565; *De Jarnett v. Harper*, 45 Mo. App. 415; *Drumb v. Keen*, 47 Iowa, 435.

It is alleged in the petition, and considerable stress is laid upon it in argument, that the father fraudulently induced the relator to bring the child to this city, and then in violation of his agreement, by force or stratagem, got possession of the child. The allegation is very weakly sustained by evidence.

It appears that relator was coming here on business, and the father in a letter to the husband of relator said: "If she brings him to Denver to stay *I will not* take him from her," and it is clearly inferable from the evidence that the principal business was to settle the custody of the child, and that she wished either to adopt him or surrender him upon the receipt of about $700, and failing to agree, the father took the child and carried it home. Admitting all that is claimed, it is a matter of no legal importance; having got the custody he could legally retain it.

Forsyth on The Custody of Infants, 65, says: "That so long as the infant is not in the custody of the father, the court will, under certain circumstances, prevent him from obtaining possession of it, but if he has already got possession of the child, the court will not interfere to take it from him, at least unless there be apprehension of ill treatment or moral contamination by him." See *Foster v. Alston*, 6 How. (Miss.) 406; *Johnson v. Ferry*, 34 Conn. 259.

It follows that the first order of the district court denying the petition was correct in the first paragraph, that the subsequent portion of the order and all subsequent orders and decrees were in excess of its jurisdiction and void, and must be reversed, and that the father (plaintiff in error) be declared to be entitled to the custody of the child.

*Reversed.*