# Wytheville

### PARRISH v. PARRISH AND OTHERS

#### June 11, 1914.

1. DIVORCE—*Custody of Children—Habeas Corpus.*—In controversies over the custody of children of divorced parents, while our law fully recognizes the primary right of the father to the custody of the child, when the father is claiming to recover the custody of his child, the court will exercise its discretion according to the facts and what appears to be best calculated to promote the infant's welfare, having due regard to the legal rights of the party claiming the custody.

2. DIVORCE—*Custody of Children—Security for Return—Habeas Corpus.*—A non-resident father who has been awarded the custody of his infant child for a part of each year, and required to return it to its mother at the end of the stated periods, and also to abide the future orders of the court concerning such custody, should not be required to give bond and security to secure the fulfillment of these obligations where, as in the case at bar, the father has established himself as a man of character in the communities in which he has lived, and there is no reason to believe that he will violate his faith with the court, or be guilty of a contempt of its authority.

Error to a judgment of the Circuit Court of Nansemond county on a petition for writ of *habeas corpus.* To a judgment awarding the custody of an infant upon certain terms and conditions, the petitioner assigns error.

*Amended and Affirmed.*

The opinion states the case.

*P. H. C. Cabell, A. L. Holladay* and *J. H. Corbitt,* for plaintiff in error.

*R. H. Rawles, Wm. M. Crumpler, C. V. Meredith* and *E. E. Holland,* for the defendants in error.

Keith, P., delivered the opinion of the court.

James S. Parrish, a citizen of Cook county, Illinois, filed his petition in the Circuit Court of Nansemond county in which he shows that in December, 1903, he married Fannie S. Crumpler, of Suffolk, Virginia, and thereafter resided with her in the city of Chicago; that a son, James Shepherd Parrish, Jr., was born of this marriage on March 18, 1906, and was the only child of the marriage; that on March 30, 1910, petitioner filed his bill in the Superior Court of Cook county, in the State of Illinois, asking an absolute divorce, and by the decree of that court at its May term, 1910, the bonds of matrimony were dissolved and petitioner granted an absolute divorce; that at the time of the entry of this decree James Parrish, Jr., was with his mother in the town of Suffolk, Virginia; that petitioner has from time to time, personally or through his attorneys, applied to his former wife, Fannie Parrish, to surrender his son to him, which she has refused and still refuses to do. Petitioner avers that he is thirty-three years of age, has lived and conducted his business in the city of Chicago for eleven years, is sober, industrious and prosperous, commands the respect, confidence and affection of his associates, enjoys a good income, and is morally, socially, temperamentally and financially a suitable father to have the custody of his son and the care of his health, education, maintenance, advancement in life, and all that constitutes his best interests as a boy, a man and a useful citizen. He insists that he is entitled to the custody and care of his son, whose best interests demand that he be delivered to, maintained, reared and educated by and under the

care of petitioner; that his son is illegally detained in the custody of his mother, and he therefore prays that a writ of *habeas corpus ad subjiciendum* be issued, requiring Fannie May Parrish and her mother, Sallie A. Crumpler, with whom she resides, to bring the body of James Shepherd Parrish, Jr., before the court, and that he be released from the restraint in which he is now held and be delivered to petitioner.

The defendants answered this petition, and in so much of the answer as we deem it necessary to consider they aver that the infant, who was at that time five years of age, has from birth received the constant care and attention of his mother, and that everything has been done to promote his welfare, physically, mentally and morally; that she is financially able to give her child every possible comfort and to provide for his proper education, and to do all things necessary to cause him to develop into the highest type of manhood; that the child is of an extremely nervous temperament, and by reason of his physical condition requires the constant and watchful care of a mother; that slight shocks to his nervous system or improper diet often produce convulsions and have created such a physical condition that unless he receives constant and watchful attention the result to his mind and body may be disastrous or fatal; that the general welfare and bodily ailments of the child demand that he should live in a moderate climate and remain with his mother where he can be well nurtured and properly cared for. The respondents deny that the best interests and general welfare of the child demand that he should be committed to the custody of the father, for the reason that his father being unmarried and actively engaged in business, the larger part of the time of the child must necessarily be spent in a large city, either in a hotel, apartment, or boarding-house, away from his father,

under the care of hired servants, and amid conditions and surroundings totally unfitted to promote his welfare. Respondents deny that the infant is illegally detained.

Upon the issues thus made a great deal of evidence was taken, which we think fully sustains the finding of the circuit court as set out in its order of January 18, 1913, which so clearly states the facts upon which the decision must turn that we deem it best to give it in full, omitting the formal parts, as follows:

"The court is of the opinion that the petitioner, James Shepherd Parrish, is entitled to the custody of his son, James Shepherd Parrish, Junior, and that the said James Shepherd Parrish, Junior, is illegally detained in the custody of the said respondents, Fannie May Parrish and Sallie A. Crumpler.

"The court is further of the opinion and doth so find that the said James Shepherd Parrish, the father of said infant, is fit for the trust and is entitled to the custody of the person and the care and education of the said infant, but the court being further of the opinion that the best interests of the said infant at this time, in view of his tender years as well as his physical condition, susceptibility to disease and the danger incident to a change of climate, require that the said infant remain in Virginia during the winter months.

"And it further appearing to the court that the mother of said infant is likewise a fit and suitable person to care for, direct and superintend the education and training of the said infant, and is otherwise able to do so, and to surround him with the necessities and comforts of life, is of the opinion and doth order that until hereafter changed by a future order of this court the said infant, James Shepherd Parrish, Junior, shall remain with his mother in the city of Suffolk, Virginia, during the school months beginning with September 15 and ending with

June 15 of each year, and during the remainder of the year shall remain with his father, James Shepherd Parrish, to whom he shall be delivered upon request of said James Shepherd Parrish in Suffolk, Virginia, but before the said petitioner, James Shepherd Parrish, shall have the right to take the said infant he shall execute a bond in the penalty of ten thousand dollars with security deemed sufficient by the court, conditioned that he will observe the conditions, directions and restrictions contained in this order or any other order that may be entered in these proceedings, and especially that he will produce the said infant before the court whenever ordered so to do, and that he will return him to the mother in Suffolk, Virginia, not later than September 15, of each year.

"It is further ordered that each parent shall have the right to see said infant at any time he or she shall desire without hindrance or interference on the part of the other and shall in so far as it is possible inculcate in the said infant feelings of love, respect and veneration for its parents.

"It is further ordered that these proceedings remain upon the docket of this court in order that such future proceedings may be had or orders entered as the change of conditions in the life or requirements of said infant may dictate as best for his interests and welfare.

"It is further ordered that each party hereto pay their respective costs."

As we have said, the evidence fully sustains the finding of the court, and it cannot be read without sincere regret that a man and a woman who, with respect to others, have established the reputation and character among those with whom they have lived which they have won for themselves, should not by mutual forbearance and compromise be able to live together and give to their

infant son the strength and support which is due from a father tempered by the tenderness and love which is always present in a mother's heart.

There is no duty which a court has to perform more difficult than that which confronts us in this case, for whatever our decision may be, we are compelled to turn a deaf ear to the pleadings of nature, separate a parent from its child and deprive the child of the care and nurture of one of its parents. As the wisest solution of this difficulty, the tendency of the courts has been, especially in recent years, to consider all the facts and circumstances of the particular case, and to determine what is best for the present and future interests, moral and physical, of the child. Our law fully recognizes the primary right of the father to the custody of the child (*Carr* v. *Carr*, 22 Gratt. (63 Va.) 168; *Latham* v. *Latham*, 30 Gratt. (71 Va.) 307); but it is also well established thac "where he has not the custody and is seeking to be restored to it, the court will exercise its discretion according to the facts, consulting the wishes of the minor if of years of discretion; if not, exercising its own judgment as to what will be best calculated to promote the interests of the child, having due regard to the legal rights of the party claiming the custody." *Armstrong* v. *Stone and wife*, 9 Gratt, (50 Va.) 102. *Merritt* v. *Swimley*, 82 Va. 433, 3 Am. St. Rep. 115; *Coffee* v. *Black*, 82 Va. 567.

In *Stringfellow* v. *Somerville*, 95 Va. 701, 29 S. E. 685, 40 L. R. A. 623, this question was fully considered and the rule deduced from many authorities there cited was, that "when the father is claiming to recover the custody of his child, the court will exercise its discretion according to the facts and what appears to be best calculated to promote the infant's welfare."

We have given careful consideration to the evidence in this case and we cannot resist the conclusion that the

result arrived at by the circuit court is for the best interests of the child at the present time. It will be observed that the order of the circuit court provides that the cause shall remain upon the docket of the court so that orders may be entered as the change of conditions in the life or requirements of the infant may dictate. The child is now eight years of age. It will soon become manifest whether he is being nurtured, educated and trained to meet the duties and responsibilities of life. The order of the court places him with his father during three months of the year, with the right of access to him at all times. He will thus have the opportunity to observe the growth and development, mental and physical, of his son, and the circuit court is always open by its order to meet whatever change of conditions may arise, and to supervise alike the conduct of father and mother with respect to the child with an eye single to the promotion of its best interests. For the present, therefore, we are of opinion that the order of the circuit court should be affirmed, with an amendment which we shall now consider.

The circuit court finds that the father is fit for the trust and is entitled to the custody of the person and the care of the education of his child, and yet, while commending his character, imposes upon him as a condition to his enjoying the society of his son from the 16th of June to the 15th of September of each year that he shall execute a bond in the penalty of ten thousand dollars, with surety, conditioned that he will observe the directions and restrictions contained in the order of the court or any order that may thereafter be entered, and especially that he will produce the infant before the court whenever ordered so to do, and that he will return him to his mother in Suffolk, Virginia, not later than September 15 of each year. This provision suggests the

apprehension that the father would abduct the child, that he would violate his faith with the court and be guilty of a contempt of its authority. We cannot think that such conduct is to be apprehended upon the part of one who has established himself as a man of character in the communities in which he has resided, and we cannot reconcile it to our sense of right to require a father to enter into bond with surety not to commit a crime as a condition upon which he should have for a limited period of each year the society of his only son.

For these reasons, we are of opinion that the order of the circuit court should be amended so as to omit so much of it as requires the plaintiff in error to execute a bond, and that as amended it should be affirmed.

*Amended and Affirmed.*