BARBARA PUGH

*v.*

DOYLE A. PUGH

(No. 10131)

Submitted September 27, 1949. Decided December 6, 1949.

Lovins, Judge, not participating.

*R. Doyne Halbritter, F. E. Parrack, Charles V. Wehner,* for plaintiff in error.

*L. F. Everhart, Frank B. Everhart,* for defendant in error.

HAYMOND, PRESIDENT:

The petitioner, Barbara Pugh, a resident of Los Angeles, California, and the former wife of the respondent, Doyle A. Pugh, instituted this habeas corpus proceeding on May 25, 1948, in the Circuit Court of Preston County, to obtain from the respondent the custody of the infant child of the parties, Michael A. Pugh, then four years of age. The case was heard upon the petition, the return and answer of the respondent, and the evidence introduced in behalf of each of the parties. By final judgment entered September 7, 1948, the circuit court awarded separate part-time custody of the child to each of the parties for an alternate period of six months, the petitioner to have him from September 9, 1948, to October 1, 1948, and thereafter from April 1 to October 1, and the respondent to have him from October 1 to April 1, in each year, until the child becomes of school age; gave the petitioner permission to take the child to her home in Los Angeles, California, during the periods of her custody of the child; required the respondent to pay the petitioner $40.00 per month for the support of the child while he was in her custody; and placed the child under the supervision of the Department of Public Assistance of this State until he should become twenty one years of age. To that judgment this writ of error was granted by this Court.

The married life of the petitioner and the respondent presents a series of unhappy events. They were married at Long Beach, California, on March 26, 1943, and on August 12, 1944, their son, Michael A. Pugh, was born. At the time of the marriage the respondent was in the military service as a member of the United States Marine Corps. While with the marines he spent some time in service overseas. During that time the petitioner, who seems to have had the custody of the child, lived and worked at different places in California. The respondent was discharged from military service on December 4, 1945. At that time the

petitioner and the child were residing with her mother in Long Beach, California, and after his discharge the respondent lived with them at that place until the petitioner and the respondent finally separated on January 26, 1946. The respondent, either before or after the separation, was intimate with another woman who became pregnant during their association and he obtained a divorce from the petitioner at Reno, Nevada, on March 13, 1947, in an uncontested suit which he instituted against her in that State. Immediately after the divorce was granted, the respondent and the woman with whom he had been associating, who is now his wife, were married at Tia Juana, Mexico; and on April 4, 1947, she gave birth to a child who is living with them and was thirteen months of age at the time this proceeding was heard. Of course the validity of the divorce or of the marriage is not in issue in this proceeding.

After the petitioner and the respondent separated, he had the custody of their child, Michael A. Pugh, for some time and when he was in Reno for the purpose of obtaining a divorce the child remained at the home of the parents of his present wife. From February, 1947, until April 26, 1948, the child was in the custody of the petitioner at the home of her grandmother at Huntington Beach, California, or at the home of a Mrs. Steele in Los Angeles, where she was living on April 26, 1948. During the afternoon of that day, in her absence and without her knowledge, the respondent came to the home of Mrs. Steele, got the child and, early in May, 1948, brought him to his present place of residence at Arthurdale, in Preston County, West Virginia. When the petitioner returned about two o'clock the same day she learned that the respondent had taken the child. She endeavored to locate the child at Long Beach, where the respondent had been living with his wife's parents. They told her that the respondent had left but that they did not know where he had gone. Not being able to find the respondent or the child in California, the petitioner, accompanied by Mrs. Steele, came to the home of the respondent's parents in

Preston County on May 16, 1948, in search of the child. The respondent permitted her to see the child but refused her demand for custody. This proceeding followed and the judgment of which the respondent complains was entered on September 7, 1948.

The evidence introduced in behalf of the respective parties is replete with charges and countercharges of misconduct upon the part of each and of neglect of the child by both. It shows that both of the parties, during their marriage, on numerous occasions drank intoxicants excessively and engaged in questionable moral conduct with other men and women. The petitioner kept late hours and was frequently away from her home, leaving the child to be cared for by persons with whom she resided during the time she had him in her custody from February, 1947, until April, 1948. The respondent testified that she was absent from home when he returned there after being discharged from military service on December 4, 1945; that the child was dirty and improperly cared for at that time; that he found the petitioner late at night at a bowling alley in an intoxicated condition; and that he separated from the petitioner because she drank excessively, refused to feed and care for the child, and attended late parties, and because she remained at the home of her mother who was living with an unmarried man. The petitioner denied the statements of the respondent concerning the conduct of her mother and the reasons for their separation, but she did not deny his testimony with reference to her presence at the bowling alley. The misconduct of the respondent and of his present wife before their marriage in 1947 is clearly established.

The petitioner, who was twenty three years of age at the time of this proceeding was heard, intends to reside permanently in California. She is capable of earning approximately $45.00 per week and during the year 1947 her income was about $1,100.00, $400.00 of which consisted of unemployment compensation. She owns no property and has no home of her own. She is fond of her child and

several witnesses testified that she treated him kindly and cared for him properly while he was in her custody. The conduct of the respondent since his marriage to his present wife is not subject to unfavorable criticism. Since early in May, 1948, he and his present wife, his son Michael, her four year old daughter of a former marriage, and their young child have resided with the parents of the respondent in their home at Arthurdale. These parents are willing that the respondent and his family reside in their home. 'The present wife of the respondent testified that she treats Michael A. Pugh as her own child, that she wishes him to be cared for and supported by the respondent, and that she prefers to have him in the home. The respondent testified that if awarded the custody of the child he would see that he received a good education and proper moral training, and that his present wife cares for the child properly. A neighbor testified that the respondent was a suitable person to have the care and the custody of the child. There is nothing in the record to indicate that the present wife of the respondent does not properly care for the child; and the mother of the respondent testified that his present wife treats the child in the same manner in which she treats her own two children. The record is also silent with respect to the financial condition of the respondent, his earning capacity, and his present employment or lack of employment. The petitioner, however, does not question his fitness to have the custody of the child on account of any lack of financial ability upon the part of the respondent to support the child or afford him a suitable home.

By his assignments of error the respondent seeks reversal of the judgment on these grounds: (1) it awards separate part-time custody of the child to each of the parties; (2) it permits the petitioner to take the child from West Virginia to California during the time he is in her custody; (3) it requires the respondent to pay $40.00 per month to the petitioner for the support of the child while he is in her custody; (4) it places the child under the supervision of the Department of Public Assistance of

this State until he becomes twenty one years of age; and (5) it is based on certain papers which were not admissible as evidence.

In any proceeding involving the custody of an infant the welfare of the child is of paramount and controlling importance and is the polar star by which the discretion of the court must be guided. *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *Pukas* v. *Pukas,* 129 W. Va. 765, 42 S. E. 2d 11; *Harloe* v. *Harloe,* 129 W. Va. 1, 38 S. E. 2d 362; *Suter* v. *Suter,* 128 W. Va. 511, 37 S. E. 2d 474; *Frame* v. *Wehn,* 120 W. Va. 208, 197 S. E. 524; *Arnold* v. *Arnold,* 112 W. Va. 481, 164 S. E. 850; *Reynolds* v. *Reynolds,* 109 W. Va. 513, 155 S. E. 652; *State ex rel. Cooke* v. *Williams,* 107 W. Va. 450, 148 S. E. 488; *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57. In a contest between the father and the mother of an infant to determine the right to its custody, the relative fitness of the parents as its custodians is a proper subject of judicial inquiry only to the extent that this question affects the welfare of the child. 39 Am. Jur., Parent and Child, Sections 18 and 23. It is manifest that the award of separate part-time custody of the child for successive periods of six months to each of the parties, whose present places of residence are more than 2000 miles apart, will not benefit or promote, but on the contrary, will seriously impair and injuriously affect, the welfare of this little boy. Independently of the hardship of traveling 2000 miles at the end of each six months when the custody by one parent will be transferred to the other, and in addition to that semi-annual event, his home life during childhood will be continually changed and shifted from West Virginia to California and from California to West Virginia and from one parent in one environment to another parent in a different environment as often as twice a year. If both parties exercise the right to the custody granted by the court the child will have no real or settled home and no permanent environment or association during much of the period of his infancy. Such an

arrangement is wholly detrimental to the welfare of the child and for that reason, in the circumstances of this case, the court should not have awarded the custody of the child to either of the parties on any separate part-time basis.

In a habeas corpus proceeding, or other proceeding, to determine the conflicting claims of persons to the custody of a child, a court of competent jurisdiction has the inherent power, unless restricted by statute, to grant the custody of an infant to a person who does not reside in that jurisdiction and to permit the person to whom it awards the custody of the child to remove it to another state or foreign jurisdiction. *Watkins* v. *Rose,* 115 S. C. 370, 105 S. E. 738; *Jennings* v. *Anderson,* 114 S. C. 506, 104 S. E. 189; *Ex parte Davidge,* 72 S. C. 16, 51 S. E. 269; *Commonwealth ex rel. Miller* v. *Wagner* and *Commonwealth ex rel. Wagner* v. *Miller,* 160 Pa. Super. 536, 52 A. 2d 235; *Commonwealth ex rel. Lamberson* v. *Batyko,* 157 Pa. Super. 389, 43 A. 2d 364; *Pyles* v. *Pyles,* 157 Pa. Super. 450, 43 A. 2d 651; *Commonwealth ex rel. McTighe* v. *Lindsey,* 156 Pa. Super. 560, 40 A. 2d 881; *Commonwealth ex rel. Fortunes* v. *Manos,* 140 Pa. Super. 352, 13 A. 2d 886; *Commonwealth ex rel. Black* v. *Black,* 79 Pa. Super. 409; *Parrish* v. *Parrish,* 116 Va. 476, 82 S. E. 119, L. R. A. 1915A, 576; *Ex parte Means,* 176 N. C. 307, 97 S. E. 39; *Workman* v. *Workman,* 191 Ky. 124, 229 S. W. 379; *State ex rel. McGhee* v. *Superior Court,* 99 Wash. 619, 170 P. 130, L. R. A. 1918C, 921; *Wilson* v. *Mitchell,* 48 Colo. 454, 111 P. 21, 30 L. R. A. (N.S.) 507.

Some courts, though not entirely ignoring the residence of the person to whom the custody of a child may be awarded, consider that element as a factor of minor importance. *Commonwealth ex rel. Miller* v. *Wagner,* 160 Pa. Super. 536, 52 A. 2d 235; *Commonwealth ex rel. Lamberson* v. *Batyko,* 157 Pa. Super. 389, 43 A. 2d 364; *Stetson* v. *Stetson,* 80 Me. 483, 15 A. 60; *Brem* v. *Swander,* 153 Iowa 669, 132 N. W. 829; *Ex parte Barnes,* 54 Ore. 548, 104 P. 296, 25 L. R. A. (N.S.) 172, 21 Ann. Cas. 465. Other courts attach more importance to the residence of the custodian

in another state or the removal of the child to a foreign jurisdiction and either refuse to award such custody to a resident of another state, or decline to permit such removal, in the absence of unusual circumstances. *In re De Ford,* 226 N. C. 189, 37 S. E. 2d 516; *Harris* v. *Harris,* 115 N. C. 587, 20 S. E. 187, 44 Am. St. Rep. 471; *Mahon* v. *People ex rel. Robertson,* 218 Ill. 171, 75 N. E. 768; *Commonwealth ex rel. Fortunes* v. *Manos,* 140 Pa. Super. 352, 13 A. 2d 886.

When the award of custody of an infant to a resident of another state, or the removal of the infant to another jurisdiction, will not serve, or is detrimental to, the welfare of the child, such award or such removal will not be permitted. *King* v. *King,* 202 Ga. 838, 44 S. E. 2d 791; *People ex rel. Pitcher* v. *Powell,* 37 N. Y. S. 2d 643; *People ex rel. Choolokian* v. *Mission of Immaculate Virgin,* 192 Misc. 454. 76 N. Y. S. 2d 509; *Hutchinson* v. *Harrison,* 130 Va. 302, 107 S. E. 742; *Koon* v. *Koon,* 203 S. C. 556, 28 S. E. 2d 89; *Harris* v. *Harris,* 115 N. C. 587, 20 S. E. 187, 44 Am. St. Rep. 471; *Mahon* v. *People ex rel. Robertson* 218 Ill. 171, 75 N. E. 768; *Nannestad* v. *Nannestad,* 44 S. D. 241, 183 N. W. 541. The power of the circuit court to award the custody of the child to the petitioner, who is not a resident of this State, and to permit her to remove the child from its jurisdiction and to the State of California, is clear beyond question. It should not exercise that power, however, unless the award of custody to a person who is not a resident of this State and the permission to take the child out of this State promote the welfare of the child. As already pointed out, the award of part-time custody to the petitioner during alternate periods of six months with permission for her to take the child to California does not benefit the child but is detrimental to his welfare. In consequence the action of the court in making the award and in granting permission to remove the child to California was erroneous and requires reversal of the judgment.

The contention of the respondent that the circuit court erred in requiring him to pay the petitioner $40.00 per

month for the maintenance of the child while he is in her custody is well founded and should be sustained. Code, 53-4-7, relating to hearing and judgment in habeas corpus proceedings, contains this language: "The court or judge before whom the petitioner is brought, after hearing the matter both upon the return and any other evidence, shall either discharge or remand him, or admit him to bail, as may be proper, and adjudge the costs of the proceedings, including the charge for transporting the prisoner, to be paid as shall seem to be right." The language of this statute indicates clearly that the principal function of the writ of habeas corpus is the determination of the legality of the confinement of a person or of the restraint imposed upon his liberty; and this Court has said in *Mathews* v. *Wade*, 2 W. Va. 464, that "The purpose of the writ is to release any one from restraint who is detained without lawful authority." See *Click* v. *Click*, 98 W. Va. 419, 127 S. E. 194. An identical statute exists in Virginia, Code of Virginia, 1919, Section 5853; and the Supreme Court of Appeals of that State has consistently limited the issues in a habeas corpus proceeding. *Buchanan* v. *Buchanan*, 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688.

The writ has been frequently resorted to in this State and in Virginia to ascertain and enforce the right to the custody of infant children. *State ex rel. Lipscomb* v. *Joplin*, 131 W. Va. 302, 47 S. E. 2d 221; *Pukas* v. *Pukas*, 129 W. Va. 765, 42 S. E. 2d 11; *Green* v. *Campbell*, 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843; *Mathews* v. *Wade*, 2 W. Va. 464; *Buchanan* v. *Buchanan*, 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688; *Parrish* v. *Parrish*, 116 Va. 476, 82 S. E. 119, L. R. A. 1915A, 576; *Armstrong* v. *Stone and Wife*, 9 Gratt. 102, 50 Va. 102. When the custody of an infant is involved the primary object of a habeas corpus proceeding is to determine in whose custody the welfare of the infant will be advanced. *Buchanan* v. *Buchanan*, 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688. The appointment of a guardian of an infant can not be inquired into or determined in a habeas corpus proceeding. *Mathews* v. *Wade*,

2 W. Va. 464; *Hayes* v. *Strauss,* 151 Va. 136, 144 S. E. 432. In *Buchanan* v. *Buchanan,* 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688, the Court held that an award in a habeas corpus proceeding of a sum of money to be paid monthly by a parent to his former wife for the maintenance of herself and their children placed in her custody was void as a judgment in such proceeding.

The only issue in a habeas corpus proceeding to determine the custody of an infant is the proper custody of the child; and the well established rule is that in a habeas corpus proceeding involving the right to the custody of an infant, the court, in the absence of statutory authority, is without power to make an award for the support of the child. *Buchanan* v. *Buchanan,* 170 Va. 458, 197 S. E. 426, 116 A. L. R. 688; *Lowery* v. *Lowery,* 108 Ga. 766, 33 S. E. 421; *Ferguson* v. *Ferguson,* 36 Mo. 197; *People ex rel. Prior* v. *Prior,* 112 Misc. 208, 182 N. Y. S. 577; *People ex rel. Klee* v. *Klee,* 202 App. Div. 592, 195 N. Y. S. 778; *Foulke* v. *People ex rel. Foulke,* 4 Colo. App. 519, 36 P. 640; 39 C. J. S., Habeas Corpus, Section 41a; 25 Am. Jur., Habeas Corpus, Section 81. Though the duty is imposed by law upon a father to support his child while in his custody, and to pay for the maintenance of the child when it is not in his custody, that duty may not be enforced by an award of money for that purpose in a habeas corpus proceeding. As the circuit court was without jurisdiction, in this proceeding, to order the respondent to pay to the petitioner any amount of money for the support of the child, its action in awarding $40.00 per month for that purpose was reversible error.

The circuit court also committed error in placing the child under the supervision of the Department of Public Assistance of this State. The evidence does not justify the imposition of a restriction of that character upon any award of custody of the child to either of the parties and such restriction should not have been incorporated in the judgment.

The record in this proceeding contains a number of let-

ters from various persons which contain factual statements relating to the custody of the child and the conduct of the parties. Most of them are addressed to the petitioner or to one of her attorneys. In the record they appear as an exhibit. The record, however, does not disclose that any of them was filed as an exhibit with any pleading or was offered or introduced as evidence. The record also embraces a report by a representative of the West Virginia Department of Public Assistance and a report by the District Director of the Bureau of Public Assistance of Los Angeles County, both of which deal with the conduct of the parties. These reports are addressed to the judge of the circuit court but there is no indication that they were offered or introduced in evidence. The judgment recites that the proceeding was heard upon the pleadings and the evidence, upon the reports and upon all papers read, considered and filed, but that the reports were not considered as evidence. The letters and the reports were not admissible as evidence and should not have been considered for any purpose.

When this proceeding was instituted by the petitioner the respondent had at least the temporary custody of the child. Though the manner in which he obtained that custody is not commendable, his action in that respect did not transcend or exceed his right as a parent to the possession of his child, though his right to the custody of the child was subject to judicial determination in the event of a contest between him and the mother of the child. To entitle the petitioner to the custody of the child it was incumbent upon her, in this proceeding, to show that a change of the existing custody of the child by the respondent would materially promote the welfare of the child. See *State ex rel. Lipscomb* v. *Joplin*, 131 W. Va. 302, 47 S. E. 2d 221. The evidence indicates clearly that she has failed to satisfy that requirement; and, under the evidence, the court should not have disturbed the existing custody of the child by the respondent.

Because of the errors, heretofore pointed out and discussed, the judgment of the circuit court is reversed and

this proceeding is remanded with directions that it be dismissed.

*Reversed and remanded with directions.*