Statement.

## Richmond.

Boston Blower Company v. Carman Lumber Co.

December 3, 1896.

1. Supplies—*Kiln dryer for saw-mill.*—An apparatus for kiln drying lumber is not a part of the "supplies necessary to the operation" of a saw-mill, and therefore no lien is given therefor by Section 2485 of the Code.

2. Retention of Title to Personal Property—*Remedy at law—Objection to bill for want of equity—When and how raised—Personal decree.*—Where the title to personal property has been retained by the vendor, his remedy in respect thereto is at law and not in equity. If a bill in equity be filed by the vendor to enforce a lien on the property, or to subject it to sale, objection thereto for want of jurisdiction may be taken for the first time in the appellate court, though the bill was not demurred to. The objection being jurisdictional may be raised at any time, and the court may, of its own motion, dismiss the bill, though the objection be not raised by the pleadings, nor suggested by the parties. Nor in such case can the court render any personal decree against the defendant. A personal decree can only be rendered in a case where the complainant is in court upon a case properly cognizable by a court of equity.

Appeal from a decree of the Corporation Court of the city of Norfolk, pronounced October 24, 1892, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

This was a bill filed to enforce a lien for supplies furnished by the appellant to the Carman Lumber Company. The bill charges that the Carman Lumber Company was a manufacturing company engaged in the manufacture of lumber, lathes, &c., and that the apparatus furnished by it was "sup-

plies necessary to the operation" of the defendant's business. The bill also charges that the complainant had retained the title to the apparatus furnished by it, and that there had been sundry and successive sales of the property formerly owned by the Carman Lumber Company, but that each of the purchasers had actual notice of the fact that complainant had retained the title to the property sold by it. After making the necessary parties, the prayer of the bill is "that the plaintiff may be decreed to have a lien for its said claim of $1,750, and interest thereon, on all the property lately belonging to the said Carman Lumber Company, and used in operating the same, and set out in paragraph IV of this bill, and now in the possession of the Atlantic Saw-Mill Company; that the said property may be decreed to be sold to pay the said claim, unless the said Atlantic Saw-Mill Company, or the Tunis & Serpell Lumber Company, or Burruss, Son & Co., or the Carman Lumber Company, shall, within a given time, pay the same to the plaintiff; that the said parties may be required to pay the same to the plaintiff, and that the plaintiff may have all such other, further, and general relief in the premises as the nature of its case may require, or to equity shall seem meet.

"And the plaintiff will ever pray, &c."

*Walke & Old,* for the appellants.

*Tunstall & Thom,* for the appellees.

Keith, P., delivered the opinion of the court.

The Boston Blower Company, incorporated under the laws of the State of Massachusetts, brought a suit in chancery in the Corporation Court of the city of Norfolk against the Carman Lumber Company, a Virginia corporation, organized for the manufacture and sale of lumber.

The bill states that on the 15th day of May, 1888, the Car-

man Lumber Company entered into contract with the plaintiff, whereby it agreed to purchase and the plaintiff agreed to sell a Hewitt Hot Blast apparatus for drying lumber. The contract price mentioned in the agreement was $2,600, $850 to be paid when the contract was signed, but the real price was $1,750, and the payment of $850 was not in fact made, nor required to be made, but was treated as an allowance or deduction made from the regular list price for the apparatus. The payment of the $1,750 was to be made under the contract as follows: "$583.33 in cash when kiln began drying lumber, the remainder to remain in open account as below; note for $583.33 at four months; and note for $583.33 at six months subject to guaranty." The contract which was filed as an exhibit with the bill provides "that the title to all the above apparatus shall remain in the Boston Blower Company until all payments shall have been paid in funds current in New York." This apparatus was shipped and delivered to the Carman Lumber Company on the 6th of June, 1888, and the drying of lumber was commenced in July, 1888, and thereupon the cash payment of $583.33 became due. The notes for the deferred payments at four and six months were never given, but the whole of the purchase money was due at the institution of this suit. It is claimed that this apparatus so furnished by the plaintiff under the said contract was "supplies necessary" to the operation of the Carman Lumber Company, and the plaintiff has filed, under section 2486 of the Code of Virginia, a memorandum of the amount and consideration of its claim, verified by affidavit, in the clerk's office of the Norfolk County Court. Indeed, it may be conceded that the plaintiff has done all the formal acts required by the statute in order to complete its lien under section 2486.

It further appears from the bill that on the 14th day of January, 1888, the Carman Lumber Company conveyed to W. T. Dey, trustee, the saw-mill situated in Atlantic City, Norfolk county, Va., then operated by the Carman Lumber

Company, together with all the machinery, fixtures, apparatus, boilers, engines, saws, and every other kind of machinery belonging to the mill, together with the railways, tracks, cars, wharves and other fixtures and appurtenances on the premises used in connection with the mill in trust to secure Burruss, Son & Co. the payment of a note of the Carman Lumber Company for the sum of $8,500.

By deed dated December 12, 1888, W. T. Dey, trustee, conveyed the property described in the deed to him just referred to, to the Tunis & Serpell Lumber Co. by deed which is filed with the bill. In this deed Burruss, Son & Co. united, and from that deed it appears that at the sale made in November, 1888, Burruss, Son & Co. were the purchasers, and that they for a valuable consideration had transferred their bid and sold the property to the Tunis & Serpell Lumber Co.

It also appears from the bill that the Tunis & Serpell Lumber Co , by deed dated February 1, 1889, conveyed this property to the Atlantic Saw-Mill Company. Under their respective deeds the Tunis & Serpell Lumber Company and the Atlantic Saw-Mill Company took charge and possession not only of all the property mentioned in the deed from the Carman Lumber Company to W. T. Dey, trustee, but also of the dry kiln apparatus mentioned in the contract between the Boston Blower Company and the Carman Lumber Company.

It further appears from the bill that Dey, trustee, Burruss, Son & Co. and the Tunis & Serpell Lumber Co. had actual notice of the contract between the plaintiff and the defendant, and that the title to the apparatus sold by the plaintiff to the defendant, the Carman Lumber Co., had never passed out of the plaintiff. Indeed, there is no ground for any claim, nor is any claim made that the title to the property in question ever passed out of the Boston Blower Co., or was vested in any of the parties defendant. The deed of trust under which

the saw-mill property was sold bears a date prior to the sale from the Boston Blower Co. to the Carman Lumber Co., and does not pass nor attempt to pass after acquired property of any kind.

To this bill the Carman Lumber Co., the Tunis & Serpell Lumber Co., Burruss, Son & Co., W. T. Dey, trustee, and the Atlantic Saw-Mill Co. are made defendants. The cause came on to be heard upon the bill taken for confessed as to the Carmen Lumber Co., and upon the answers of all the other defendants, exhibits filed, and depositions of witnesses. The bill was dismissed, and from that decree the plaintiff has appealed to this Court

Chapter 110 of the Code provides how liens may be acquired and enforced by mechanics and others for work done and materials furnished. Sections 2475 to 2484, both inclusive, relate to the execution and enforcement of liens for work done and materials furnished in the construction, repair, or improvement of any building or structure permanently annexed to the freehold, whether performed by general contractors or subcontractors.

Section 2485, under which the lien in this case is claimed, provides a mode in which conductors, brakesmen, engine-drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics or laborers, and all persons furnishing railroad iron, engines, cars, fuel and other supplies necessary to the operation of any railroad, canal or other transportation company, and all clerks, mechanics and laborers, who furnish their services or labor to any mining or manufacturing company, whether such railways, canal or other transportation, or mining or manufacturing company be chartered under or by the laws of this State, or be chartered elsewhere, and doing business within the limits of this State, shall have a prior lien on the franchises, gross earnings, and all the real and personal property of said company, which

is used in operating the same, to the extent of the moneys due them by such company for such wages or supplies.

Sections 2475 to 2484, both inclusive, are designed for the protection of those who perform labor or furnish materials for the construction or repair of the subject upon which the lien is asserted.

Sections 2485 and 2486 are for the protection of those who furnish the labor or supplies necessary to the operation of the enterprises enumerated in those sections upon whose franchises, gross earnings and property, the lien is asserted.

The line of demarcation which distinguishes the classes seems to be well defined.

In this case the right asserted is under sections 2485 and 2486, and if it exists, it must be made to appear that the apparatus furnished is one of the "supplies necessary" to the operation of a company organized for the manufacture and sale of lumber.

Supplies are defined to be "necessaries collected and held for distribution and use," a definition which greatly strengthens the construction already given to the several sections of the Code which we have noticed.

The manufacture of lumber, and the drying and seasoning of lumber are wholly different processes, and it is not perceived that the drying or seasoning of lumber can be said in any just sense to be a part of the process of manufacture. It may add greatly to the value of lumber already manufactured, and it may be a necessary process to enable the lumber manufacturer to put his product upon the market at a profit, but it is a process wholly independent of that manufacture, and if the apparatus in which the drying or seasoning is performed be a necessary adjunct to a saw-mill, it would be more properly classed as a part of the permanent plant rendered necessary by the conditions governing the preparation of lumber for market at profitable rates than as a part of the "supplies necessary" for the operation of the saw-mill.

We are therefore of opinion that the plaintiff was not entitled to a lien under section 2485 because an apparatus for kiln drying lumber is not a part of the "supplies necessary" for the operation of a saw-mill.

If the lien claimed under section 2485 does not exist, then a court of equity has no jurisdiction in this case, for, so far as the plaintiff had any right growing out of that term of his contract which retained the title to the apparatus furnished to the defendant, the remedy at law was complete.

It does not appear that the bill was demurred to, but the objection for want of jurisdiction may be taken for the first time in this court.

In *Stuart's heirs* v. *Coalter*, 4 Randolph at page 78, it was said by Judge Carr: "It was contended in the argument that this was a case, cf which equity had no jurisdiction. This question of course will be considered first, as jurisdiction precedes discretion; and before we undertake to decide what ought to be done in a cause, we should always ascertain whether we can rightfully do anything. I will not quote authorities to show that, where a general demurrer would hold to a bill, the court, though the defendant answers, will not grant relief upon the hearing of the cause. The doctrine is too well settled. To deny it would be to say that, however unfit the cause for equity, the defendant, by failing to demur could oblige the court to entertain jurisdiction. Nor can I conceive that, in deciding the question of jurisdiction, we should be influenced at all by the case made by the evidence. It is the province of the bill to state the case. It is from this we must judge. If the evidence fit the case stated in the bill, it could of course have no influence. If it made a different case, so far from giving jurisdiction where the bill did not, it would prevent a decree where the bill was perfect, for the allegation and the proof must 'jump together.'" See also *Pollard* v. *Patterson's adm'r*, 3 H. & M. 67; *Hickman* v. *Stout*, 2 Leigh, at page 6; *Overseers of Poor, &c.* v.

*Hart*, 3 Leigh, at page 3; *Lange* v. *Jones*, 5 Leigh 192; *Morgan* v. *Carson*, 7 Leigh 238; *Hudson* v. *Kline*, 9 Gratt., at page 386.

In *Oelrichs* v. *Williams*, 15 Wallace 211, it is said: "Where there is a complete remedy at law a bill in equity must be dismissed. This objection is regarded as jurisdictional and may be enforced by the court *sua sponte* though not raised by the pleadings, nor suggested by counsel."

It is contended on behalf of plaintiff that the court below should have given a personal decree against the defendants, or some of them. Where a plaintiff is properly in equity that court will often times, in order to prevent a multiplicity of suits and do complete justice, give such relief as is usually afforded only in a court of law, but the plaintiff must be in court upon a case properly cognizable in a court of equity.

It is clear to us that no case is stated in the bill entitling the plaintiff to relief in a court of equity; that whatever right it may have is enforceable in a court of law, and only in a court of law, and therefore the decree of the Hustings Court of the city of Norfolk dismissing its bill must be affirmed.

*Affirmed.*