PRESENT: All the Justices

DERRICK EDWARD LASTER

OPINION BY
v.  Record No. 121282          JUSTICE DONALD W. LEMONS
                                 June 6, 2013

BOBBY D. RUSSELL, SUPERINTENDENT OF
WESTERN VIRGINIA REGIONAL JAIL

FROM THE CIRCUIT COURT OF THE CITY OF SALEM
Charles N. Dorsey, Judge

In this appeal we consider whether the Circuit Court of the City of Salem ("circuit court") erred when it denied Derrick Edward Laster's petition for a writ of habeas corpus.

I.  Facts and Proceedings

Derrick Edward Laster ("Laster") was tried and convicted of animate object sexual penetration on April 29, 2010, in a bench trial in the circuit court, Judge Robert P. Doherty, Jr. ("Judge Doherty") presiding.

Laster was represented by Richard L. Lawrence ("Lawrence"). At trial, the teenage victim, M.D., testified that Laster, who lived next door to her father's house, came over the night of June 28, 2009.  M.D. had fallen asleep on a chair, and Laster carried her upstairs to the bedroom.  M.D. testified that Laster laid her on the bed and began touching her.  First he rubbed her back then Laster placed his finger inside her vagina.

Laster denied placing his finger inside the victim's vagina, although he admitted carrying her upstairs, placing her

on the bed, and rubbing her back. He also admitted that he "smack[ed] her on her bottom." Judge Doherty stated that he believed M.D.'s testimony over Laster's testimony, and found Laster guilty of animate object sexual penetration.

Prior to his sentencing, Laster hired a new attorney, Richard Padgett ("Padgett"). In his preparation for the sentencing hearing, Padgett learned that the Commonwealth had made a plea offer prior to trial.

A hearing was held prior to sentencing to address whether the plea offer was ever conveyed to Laster by Lawrence. The Deputy Commonwealth's Attorney, Anne Marshall Deaton Harrell ("Harrell"), testified that a few days prior to trial, she called Lawrence and offered a plea agreement in which Laster would plead guilty to aggravated sexual battery with a recommended sentence of three years, all but four months suspended. Harrell made this offer so the teenage victim would not have to testify in court. Harrell stated that Lawrence responded within a day or two and told her Laster would not accept a felony plea offer. Lawrence testified that he did not specifically recall if he informed Laster about this offer. Lawrence had asked Harrell to consider a misdemeanor plea several times, but she declined. Lawrence testified that Laster told him numerous times he would not plead guilty to a felony.

2

Laster testified that he had told Lawrence he did not want to plead guilty to a felony or receive any jail time, because he would lose his job. Nonetheless, Laster testified that Lawrence never told him about this specific plea offer, but that he would have agreed to take this offer if he had known about it.

Judge Doherty stated at the hearing that he would give Laster "the benefit of the doubt" that the plea offer was not conveyed to him. The court declared a mistrial, ordered a new trial, and thereafter Judge Doherty recused himself from the new trial. Laster objected to the court ordering a new trial instead of reinstating the plea offer.

A new trial was held on November 4, 2010, before Judge Charles N. Dorsey ("Judge Dorsey"). Laster entered a plea of no contest, and stated on the record that he was entering his plea freely and voluntarily and that no one had made any promises to him in exchange for his plea. He stated that he had no plea agreement or understanding with the Commonwealth. At this hearing, Laster did not ask the circuit court to order the Commonwealth to reinstate the prior plea offer. The circuit court accepted Laster's no contest plea, and on January 3, 2011, sentenced Laster to 30 years' imprisonment, with 20 years suspended.

On October 20, 2011, Laster filed a petition for a writ of habeas corpus in the circuit court. Laster alleged he was

3

denied the effective assistance of counsel because his first attorney, Lawrence, did not communicate to him the plea offer from the Commonwealth. A hearing on the petition was held on March 8, 2012. The circuit court granted the Commonwealth's motion to dismiss, holding that it had no jurisdiction over Laster's claim because Laster was not being detained as a result of his first trial. Rather, Laster was being detained as a result of his second trial in which he voluntarily entered a no contest plea, and he did not allege any ineffective assistance of counsel in his second trial.

On March 21, 2012, the United States Supreme Court decided Missouri v. Frye, 566 U.S. ___, 132 S.Ct. 1399 (2012), and Lafler v. Cooper, 566 U.S. ___, 132 S.Ct. 1376 (2012). The circuit court sua sponte vacated its March 8, 2012 order and asked the parties to brief the effect of these two opinions on Laster's case. The circuit court held a hearing on April 17, 2012, and after considering the parties' briefs and argument, the circuit court granted the Commonwealth's motion to dismiss.

The circuit court held that it did not have jurisdiction to grant the relief requested because the habeas petition did not allege ineffective assistance of counsel in the second trial, and the second trial was the basis for Laster's detention. The circuit court also held that Laster did not meet the prejudice prong of the two part-test enunciated in Strickland v.

4

_Washington_, 466 U.S. 668 (1984), because Laster "failed to show a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it."

Laster filed a petition for appeal with this Court, and we awarded him an appeal on the following assignments of error:

1.  The circuit court erred by abusing its discretion in determining that it did not have jurisdiction to reinstate the Commonwealth's original plea offer of four (4) months active time in jail.

2.  The circuit [court] erred by abusing its discretion in determining that the plea offer may have been withdrawn by the Commonwealth.

3.  The circuit court erred by abusing its discretion in determining that the court would not have accepted the plea offer of four (4) months.

## II.  Analysis

### A.  Standard of Review

Whether an inmate is entitled to habeas relief is a mixed question of law and fact.  _Hash v. Director_, 278 Va. 664, 672, 686 S.E.2d 208, 212 (2009).  The habeas court's findings and conclusions are not binding on appeal, but are subject to review to determine whether the habeas court correctly applied the law to the facts.  _Id._

### B.  Analysis

Code § 8.01-654(B)(1) grants jurisdiction over petitions for writs of habeas corpus to this Court and to circuit courts.

5

The "circuit court which entered the original judgment order of conviction or convictions complained of in the petition shall have authority to issue writs of habeas corpus." Code § 8.01-654. The purpose of a writ of habeas corpus is to "test the validity of detention, and, for this purpose, the law permits a prisoner to mount a collateral attack upon his conviction or sentence." Howard v. Warden, 232 Va. 16, 19, 348 S.E.2d 211, 213 (1986); see also Buchanan v. Buchanan, 170 Va. 458, 464, 197 S.E. 426, 429 (1938) ("The primary object of habeas corpus is to determine the legality of the restraint under which a person is held.")(emphasis omitted). In a habeas corpus proceeding, the truth-seeking function of the trial process yields to a focus on the legality of a petitioner's detention and whether the petitioner presently is detained in violation of any constitutional rights. Lovitt v. Warden, 266 Va. 216, 240, 585 S.E.2d 801, 815 (2003).

The Commonwealth argues that the circuit court lacked jurisdiction over this matter because Laster is detained as a result of his second trial, and has not alleged any constitutional violation in his second trial. Although the Commonwealth frames this matter as jurisdictional, it is not. The issue whether Laster is currently detained without lawful authority focuses upon the merits of his claim and not the circuit court's power to adjudicate it.

6

In this collateral attack upon his conviction, Laster has the burden to prove by a preponderance of the evidence his claim of ineffective assistance of counsel. Jerman v. Director, 267 Va. 432, 438, 593 S.E.2d 255, 258 (2004); Green v. Young, 264 Va. 604, 608, 571 S.E.2d 135, 138 (2002). To prevail on this claim, he must satisfy both parts of the two-part test established in Strickland, 466 U.S. at 687.

Laster asserted in his petition for a writ of habeas corpus that he was denied the effective assistance of counsel because his first attorney, Lawrence, failed to communicate to him the Commonwealth's plea offer of a reduced charge and sentence recommendation. Laster asserts that he is being detained without lawful authority because of his lawyer's ineffectiveness in his first trial. He does not assert any constitutional violations in his second trial. Laster argues that his situation is similar to the respondent's in Lafler v. Cooper.

In Lafler, Anthony Cooper ("Cooper") was represented by counsel during plea negotiations. His counsel informed him of a favorable plea offer to dismiss two charges and recommend a sentence of 51 to 85 months on the other two charges, but on the advice of counsel, Cooper rejected the offer. 132 S.Ct. at 1383. After the plea offer was rejected, Cooper had a trial before a jury. Id. Cooper was found guilty and received a mandatory minimum sentence of 185 to 360 months' imprisonment.

7

Id. The parties in Lafler all agreed that counsel's advice to Cooper with respect to the plea offer was erroneous and fell below the standard of adequate assistance of counsel guaranteed by the Sixth Amendment. Id. at 1384.

In Lafler, the United States Supreme Court held that Cooper's subsequent fair trial could not erase the deficient performance by counsel during plea negotiations. 132 S.Ct. at 1388. Laster argues that, as in Lafler, his second trial could not cure the deficient performance of his counsel in the first trial.

The United States Supreme Court has urged courts considering collateral attacks upon convictions and detention to consider the prejudice prong of Strickland prior to considering the performance prong. The Court held that a court is not required to determine "whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." 466 U.S. at 697. Instead, a court may proceed directly to the prejudice prong of the two-part test "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." Id.

Following this direction, we will assume without deciding that Laster may link the first and second trials and assert ineffective assistance of counsel, and we will further assume

8

without deciding that Laster's first lawyer's performance was deficient for the purpose of <u>Strickland</u> analysis. Nonetheless, Laster may not prevail in his request for relief because he cannot prove prejudice as required in light of the Supreme Court's application of these standards to the plea context in the case of <u>Missouri v. Frye</u>.

In <u>Frye</u>, the United States Supreme Court explained that to prove <u>Strickland</u> prejudice, a defendant who has shown a reasonable probability that he would have accepted the uncommunicated plea offer must also show that neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. 132 S.Ct. at 1410. The Court stated that

> [i]n order to complete a showing of <u>Strickland</u> prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea.

<u>Id.</u>

The offer in this case was to reduce the charge of animate object sexual penetration to a charge of aggravated sexual

9

battery with a sentencing recommendation of three years'
imprisonment and all but four months suspended.  It is
significant that the plea offer was for a sentencing
recommendation, not a specific sentence.  Virginia law permits
three types of plea agreements, which are articulated in Rule
3A:8.  Rule 3A:8 provides in pertinent part:

> (c) Plea Agreement Procedure. -
> (1) The attorney for the Commonwealth and
> the attorney for the defendant or the
> defendant when acting pro se may engage in
> discussions with a view toward reaching an
> agreement that, upon entry by the defendant
> of a plea of guilty, or a plea of nolo
> contendre, to a charged offense, or to a
> lesser or related offense, the attorney for
> the Commonwealth will do any of the
> following:
>   (A) Move for nolle prosequi or dismissal of
> other charges;
>   (B) Make a recommendation, or agree not to
> oppose the defendant's request, for a
> particular sentence, with the understanding
> that such recommendation or request shall
> not be binding on the court;
>   (C) Agree that a specific sentence is the
> appropriate disposition of the case.  In any
> such discussions under this Rule, the court
> shall not participate.
> (2) If a plea agreement has been reached by
> the parties, it shall, in every felony case,
> be reduced to writing, signed by the
> attorney for the Commonwealth, the
> defendant, and, in every case, his attorney,
> if any, and presented to the court.  The
> court shall require the disclosure of the
> agreement in open court or, upon a showing
> of good cause, in camera, at the time the
> plea is offered.  If the agreement is of the
> type specified in subdivision (c)(1)(A) or
> (C), the court may accept or reject the
> agreement, or may defer its decision as to

10

the acceptance or rejection until there has been an opportunity to consider a presentence report. If the agreement is of the type specified in subdivision (c)(1)(B), the court shall advise the defendant that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw his plea, unless the Commonwealth fails to perform its part of the agreement. In that event, the defendant shall have the right to withdraw his plea.

Rule 3A:8(c). This rule makes it clear that if the agreement is for a sentencing recommendation under Rule 3A:8(c)(1)(B), the trial court is not required to accept the recommendation, and the defendant has no right to withdraw his plea on that basis.

Again assuming without deciding that the Commonwealth would have left the offer available for acceptance and it would have been reduced to a written agreement pursuant to Rule 3A:8(c)(2), Laster was required to prove that the circuit court would have accepted the plea agreement and the sentencing recommendation. In Frye, the United States Supreme Court noted that some state rules give trial courts the discretion to accept or reject plea agreements. Frye, 132 S.Ct. at 1410. Virginia is one of those states. See Rule 3A:8. In Frye, the Court elaborated that in such jurisdictions where trial courts have this discretion

> [it] can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not

11

> a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain. The determination that there is or is not a reasonable probability that the outcome of the proceeding would have been different absent counsel's errors can be conducted within that framework.

Id.

When considering Laster's habeas petition, the circuit court properly applied this test as enunciated in Frye. The circuit court judge, Judge Dorsey, stated that he was very familiar with Judge Doherty from having practiced together and having been on the same bench for almost ten years. He further stated,

> I cannot imagine that Judge Doherty would have accepted, even if the request had been made at the first trial, if the Commonwealth had not withdrawn the offer, assuming that they either didn't or didn't have the jurisdiction or authority to do so, I cannot imagine that Judge Doherty, if the agreement had been presented to him, would have accepted it.

Laster has offered no evidence to prove that this particular plea offer was within the boundaries of acceptable plea agreements and sentences in the jurisdiction, or that Judge Doherty had ever accepted similar plea agreements and sentences in other cases involving similar facts and charges.

III.  Conclusion

We hold that the circuit court did not err in dismissing the petition for a writ of habeas corpus.

Affirmed.